PATTIE E. HOUSE et al. v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 10 March, 1915.)

**Telegraphs—Delivery to Company—Principal and Agent—Evidence.**

In order to hold a telegraph company liable in damages for the non-delivery of a telegram, it is necessary to show that it was received for the company by some one of its agents having express or implied authority to do so, which does not appear in this case, the evidence tending only to show that the one to whom the message was delivered, from a train en route passing a station, was known to the person delivering it to have had some connection with a railroad company or the defendant telegraph company at some other location and time, and had been in the defendant's office, and that he receipted and received the money for the transmission of the message, saying it would immediately be sent.

APPEAL by defendant from *Connor, J.,* at July Special Term of HERT-FORD.

Action to recover damages for negligence in the transmission and delivery of a telegram.

The defendant denied that it received the telegram.

The following is the evidence relied on by the plaintiff to prove a delivery to the defendant:

J. J. House testified as follows: "Dr. Green wrote the telegram after we left Ahoskie, and we tried to send it at every station until we got to Whaley, Virginia. It was early in the morning and the stations were not open. When we reached Whaley, Dr. Green gave the telegram to J. H. Ellen; he came to the car, bareheaded; I don't know where he came from; I had known Ellen seven or eight months. When I saw Ellen before, he was at Aulander. I saw him in the telegraph office.

"Ellen received the telegram and Dr. Green paid him for it. Dr. Green read the message to J. H. Ellen, and said to him: (That the message was important; that we wanted it sent at once; that my wife's life depended upon this.) The message was taken by Ellen. We paid Ellen 25 cents.

"I was present when the message was delivered to J. H. Ellen. Mr. Brinkley, the baggage master in charge of the car in which we were riding when we reached Whaley, called Ellen. Dr. Green handed the message to Ellen. I am quite sure I heard all that passed between the three—that is, Brinkley, Dr. Green, and Ellen—while they were together."

Pattie E. House testified: "I heard Dr. Green read the message to some one. I was in the baggage car. I remember to whom the message was addressed. Dr. Green told the person to send the message at once; that delay would probably be the cause of my death. I cannot say that any one replied that he understood the message."

HOUSE *v.* TELEGRAPH CO.

J. N. Vann testified as follows: "I have known J. H. Ellen three or four years. I knew him in 1911. I think I was in Whaley in fall of 1911. I have seen Ellen at Whaley. I don't know that I was there in December, 1911. I think I saw Ellen in 1911."

Q. "What was he doing when you saw him?"

A. "He was in the employment of the Atlantic Coast Line Railroad Company. I never saw him receive or send messages. The Western Union Telegraph Company's office and the Atlantic Coast Line Railroad Company's office at Whaley are all in one. I frequently saw J. H. Ellen around there. I cannot say what he was doing when the trains passed, but I saw him frequently in the office. He came from the office—a little barred-off place—to the train. I have seen him at Aulander. Ellen was employed by the A. C. L., to the best of my knowledge and belief."

Dr. Green testified: "I wrote a telegram to Dr. Payne. We tried to send it at the first station we found open. I don't remember the words of the telegram. I gave it to Mr. Brinkley, the baggage master. It was early in the morning and only two stations were open. Whaley was the first. I was in the baggage car with Mrs. House, Mr. House, and Mr. Brinkley. I first gave the telegram to Mr. Brinkley. When we got to Whaley a man came out to the door. He had papers in his hand. The man took the telegram and signed a paper. That is the man (pointing to a man in the courtroom). Mr. Brinkley said: 'I have a telegram for you,' and asked him to read it. I took the telegram and read it to him. He was standing at the car door. Brinkley understood the message and told the man to send it off. I paid the man 25 cents. He accepted 25 cents and said he would send off the telegram as soon as he could.

"I have stated all that I remember that occurred between J. H. Ellen and myself. I read the telegram to him and paid him 25 cents for same. He said he would send it at once. I wrote it between Ahoskie and Tunis, I think; I am not sure whether the train was running or not when I wrote it.

"Ellen did not come into the car. He was standing at the car door, and I was in the door, with Mr. Brinkley standing by me. I don't know how far the telegraph office is from the train; I suppose some 20 feet. I did not carry the message to the office, because I did not have time. I don't think I told him it was for Mrs. House."

At the conclusion of the evidence the defendant moved for judgment of nonsuit, which was denied, and the defendant excepted.

There was a verdict and judgment for the plaintiff, and the defendant appealed.

*D. C. Barnes* and *E. T. Snipes* for plaintiff.
*George H. Fearons, George Cowper,* and *W. D. Boone* for defendant.

PER CURIAM. There is no evidence that Ellen, to whom the telegram was delivered at Whaley, was the agent of the defendant company, and therefore there is an entire failure of proof on the material fact of a delivery of the telegram to the defendant company.

The only evidence tending to connect Ellen with the telegraph company is that of Mr. House, who says that he had seen Ellen in the telegraph office at Aulander, while, on the other hand, a witness for the plaintiff, Mr. Vann, testifies that Ellen was in the employment of the railroad company.

We are, therefore, of opinion that the motion for judgment of nonsuit ought to have been allowed.

Reversed.